Alvin JONES, Appellant,

v.

The STATE of Texas, State.

No. 2–96–502–CR.

Court of Appeals of Texas, Fort Worth.

Jan. 15, 1998.

Gwinda L. Burns, Fort Worth, for Appellant.

Tim Curry, Criminal District Attorney, Charles M. Mallin, Chief of the Appellate Section, Debra Ann Windsor, Camille Higgins, Bill Durkin, Assistant Criminal District Attorneys, Fort Worth, for Appellee.

Before CHUCK MILLER, J., Sitting by Assignment, CAYCE, C.J., and LIVINGSTON, J.

## OPINION

PER CURIAM.

Appellant Alvin Jones was charged by indictment with the offense of possession of a controlled substance, methamphetamine, in an amount of more than one gram but less than four grams. On July 24, 1996, he pleaded not guilty to a jury and, after hearing evidence, the jury found him guilty. At the completion of the punishment stage of the trial, the judge assessed Jones's punishment at confinement for three and one-half years in the Institutional Division of the Texas Department of Criminal Justice. On appeal Jones brings six points complaining that the trial judge committed reversible error in admitting certain testimony regarding extraneous offenses, that the police did not have probable cause to stop him, that the chain of custody was not sufficiently proven, and that the evidence is insufficient in several respects. We affirm.

Because both the admissibility and the sufficiency of the evidence are challenged, a rendition of the evidence adduced at trial is appropriate. On March 10, 1995, Jones and another male were spotted by Arlington Police Sergeant Victor Hall under circumstances that caused Hall to detain Jones and run a computer check for outstanding warrants on him. The check revealed that Jones had two outstanding warrants, and therefore Hall placed Jones under arrest.

The particular circumstances that led to the detention were described in detail by Hall. While on routine patrol in his marked police vehicle on that day at 1 a.m., Hall observed Jones and another male walking in the vicinity of some south Arlington apartments that had been the scene of burglaries in the recent past. The unidentified man was carrying a large box-like object on his shoulder. Because of the time of night and the recent apartment burglaries, Hall made a U-turn to further observe the men, only to discover that they had quickly disappeared. After a short pursuit on foot, during which both Hall and his partner Sergeant Dexter Rhodes lost sight of the two men, Hall spotted a man who physically resembled one of the pursued suspects on the path Hall believed the two suspects had taken. Because of the resemblance in both clothing, physique and race, Hall believed that the man, later identified as Jones, was one of the suspects. Jones, when approached by Hall, pointed westbound and said, "They ran that way."

Close to the now nervous-acting Jones stood, Hall observed a microwave oven just laying on the ground. The microwave matched the general appearance of the box-like object that Hall had observed one of the suspects carrying moments before. Hall questioned Jones about the microwave, and Jones said that a person named Art had been trying to sell the oven and that Jones was

guiding Art to a potential buyer in the apartment complex. It was while investigating this story that Hall had the warrant check run that revealed the outstanding arrest warrants for Jones. Hall then handcuffed Jones and conducted a pat-down weapons search of his person.

After Officer Hall arrested Jones on the two outstanding warrants, another Arlington police officer, James Malloy, arrived and transported Jones to the Arlington police station. Malloy also did a pat-down weapons search on Jones and placed Jones in the right rear seat of the police car for the ride to the station. Malloy testified that he searched that particular area immediately before placing Jones there, to the extent that he had to pull the seat out to reach the seat belts that had fallen behind the seat. Malloy added that he also thoroughly searched that area of the car's seats after transporting another defendant to the police station earlier that evening. En route on this trip, Malloy made use of the car's rear-view mirror and observed the 225–pound Jones constantly moving in the back seat in spite of the fact that he had been seat-belted in by Malloy. After arriving at the station and extracting Jones from the vehicle, Malloy again searched the police car's back seat, just as he had done twice before placing Jones in the seat. During this search, however, Malloy uncovered a plastic baggie sticking out and containing what he described as a white powdery substance. When Malloy showed Jones the baggie, Jones denied that it was his. Malloy field tested the contents of the baggie using a Scott Reagent Test and the contents tested positive for cocaine. Malloy thereafter sealed the baggie with tape, marked his initials on the tape, weighed the baggie, discovered it weighed 2.7 grams, sealed the baggie in an evidence envelope, sealed the envelope with tape, marked his initials on that tape, and finally placed the evidence envelope in the secure drug evidence drop box. Malloy did not see the baggie again until he picked the evidence envelope up from the property room and brought it to court for trial. The plastic baggie that Malloy testified he recovered from the back seat of the police car immediately after he removed Jones from that area of the vehicle was introduced into evidence as State's exhibit 3A. Until he was cross-examined by Jones's attorney during the trial, Malloy thought that the baggie contained cocaine.

Tom Ekis, a Forensic Examiner with Forensic Consultant Services of Fort Worth, testified for the State that Ginger Courtney picked the evidence envelope up at the Arlington Police Station and delivered it to him. Courtney was careful to note on the envelope the date and time and from whom she received the envelope. The envelope was sealed when Courtney delivered it to Ekis, who thereafter opened the envelope, removed the baggie, and tested its contents. Ekis said that the baggie's contents were tannish-brown and, without the baggie, weighed 1.02 grams. The powder proved to be methamphetamine. After the test, Ekis returned the baggie and the powder to the evidence envelope, resealed it, and placed it in a secure vault at Forensic Consultant Services until Courtney retrieved it and returned it to the Arlington Police Department property room. After identifying State's exhibit 3A as the baggie he tested, Ekis noted that the color of the powder was tannish-brown at the time of trial but may have been lighter at the time he tested it because methamphetamine can darken over time. The trial occurred fourteen months after the contraband was seized.

The Arlington Police Department Evidence Transmittal Sheet was admitted as State's exhibit 4, and is contained in the record. It is attached as appendix "A." The sheet bears dates of March 14, 1995 and March 15, 1995 for matters of which it bears notations. Ekis's Examination Report was introduced at trial and is also in the record. It is attached as appendix "B." It shows that a sealed envelope containing a plastic baggie with powder was received by Ekis on March 15, 1995. On appeal, Jones attacks the sufficiency of the evidence and the chain of custody for State's exhibit 3A. More specifically, Jones maintains in points four, five, and six that the evidence shows his mere presence where the controlled substance was found and thus is insufficient under case law. *See Humason v. State,* 728 S.W.2d 363, 367 (Tex. Crim.App.1987). Jones points out that he was searched twice by two officers before

being placed in the police car and that no one saw him secrete the contraband. Jones further maintains that the Arlington Police Department Evidence Transmittal Sheet shows a date of offense for State's exhibit 3A as March 15, 1995, not March 10, 1995 as the arresting officers testified. Moreover, Officer Malloy testified that the contraband tested positive for cocaine, not methamphetamine, and weighed 2.7 grams, not 1.02 grams. Malloy also testified that the seized powder was white, not the tannish-brown color of the tested powder. Finally, Jones asserts that there was no testimony about who had control of the evidence while it was in the police property room.

■ Thus, we perceive Jones's complaints to be a multiple attack on the legal sufficiency of the evidence. The evidence in a trial will be considered legally sufficient if any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *See Jackson v. Virginia*, 443 U.S. 307, 318–19, 99 S.Ct. 2781, 2788–89, 61 L.Ed.2d 560, 569–70 (1979); *Emery v. State*, 881 S.W.2d 702, 705 (Tex.Crim.App. 1994), *cert. denied*, 513 U.S. 1192, 115 S.Ct. 1257, 131 L.Ed.2d 137 (1995). In analyzing the evidence thusly we view it in the light most favorable to the verdict. *See id.* The jury of course is the sole judge of the credibility of the witnesses and of the weight to be given their testimony. *See Bonham v. State*, 680 S.W.2d 815, 819 (Tex.Crim.App.1984), *cert. denied*, 474 U.S. 865, 106 S.Ct. 184, 88 L.Ed.2d 153 (1985). Thus it is the appellate court's duty not to disregard, realign, or weigh evidence. *See Moreno v. State*, 755 S.W.2d 866, 867 (Tex.Crim.App.1988).

■ In this case, Jones argues that the fact he was twice searched by police before being placed in the car is proof that he did not have the baggie on him before he was placed in the car. However, both officers testified that the focus of their "pat-down" search was weapons, not a soft, pliable article like the baggie that was ultimately discovered. Malloy even performed an in-court demonstration of the pat-down search and remarked that he would not have found the baggie in question if it were concealed in Jones's pocket or waistband. This explana-

tion of why these searches might not have uncovered the baggie, coupled with the evidence that Malloy twice searched the automobile seat area in particular before placing Jones there, viewed in the light most favorable to the guilty verdict, is sufficient proof for a rational jury to believe that the baggie containing the seized contraband was not in Officer Malloy's police vehicle, much less right below where Jones was seated in the vehicle, before the time Jones was placed in the car on that seat. Thus a jury could have rationally found that Jones, while seated and squirming around in the vehicle and being transported to the police station, removed the baggie of contraband from where it was secreted on his person and stuffed it between the seat back and seat under which he sat, where it was soon discovered during Malloy's search of that area.

■ Jones also argues that Malloy's field test showed the contraband was cocaine weighing 2.7 grams, while the forensic evidence was that it was methamphetamine weighing 1.02 grams. Also, the date of offense attached to the methamphetamine was March 15, 1995 according to the Arlington Police Department Evidence Transmittal Sheet, whereas the officers testified that the offense for which Jones was arrested occurred March 10, 1995. Additionally, Malloy saw the powder as white, while Ekis saw the powder he tested as tannish-brown, at least at the time of trial.

However, Malloy and Ekis testified that the field test was just that, a field test. It was not meant to be proof for a court of law that the tested substance was what the presumptive test said it was. Ekis testified that he weighed the powder without the baggie to arrive at the 1.02 gram weight, and that smaller baggies can weigh from .03 grams to .05 grams. Plus, Ekis testified that methamphetamine such as found in the sample he analyzed would darken in time. Next, the transmittal sheet, attached as appendix A, speaks for itself. We do not read the references on it to amount to a notation that the date of the offense was March 15, 1995. Finally, we note that Malloy was meticulous in his testimony that State's exhibit 3A was the baggie he seized, doubly sealed, and ini-

tialed. Ekis testified that when Courtney brought State's exhibit 3A to him from the Arlington Police Department the bag was still sealed.

We hold that from the totality of the evidence a rational jury, considering the evidence in the light most favorable to the verdict, could have found that the contraband seized by Malloy and tested by Ekis was the same. Thus we hold that a rational trier of fact could have found that Jones secreted the baggie containing a white powdery substance in the police vehicle, that Malloy seized it and sealed it in the drop box of the Arlington Police Department, that Courtney delivered it to Ekis, who thereafter tested its contents and determined their chemical composition to be methamphetamine weighing 1.02 grams, and that Ekis had Courtney return the examined methamphetamine to the Arlington Police Department's property room where it was retrieved by Malloy and brought to court to be introduced into evidence as State's exhibit 3A. Thus the jury could have found beyond a reasonable doubt that Jones committed the essential elements of the offense. *See Mattias v. State,* 731 S.W.2d 936, 939 (Tex.Crim.App.1987); *Bowers v. State,* 570 S.W.2d 929, 932 (Tex.Crim.App. [Panel Op.] 1978). Points four, five, and six are overruled.

In point one, Jones alleges error in the admission of Officer Hall's testimony about events leading up to the computer check that revealed warrants for Jones's arrest. Jones maintains that the gist of Hall's testimony was that Jones was being detained for investigation of burglary, or at least theft of a microwave oven. In point two, Jones complains of the admission of Hall's testimony that two arrest warrants were outstanding for Jones. This testimony, Jones correctly points out, amounted to evidence that he was accused of committing two other extraneous offenses. Jones urges that his guilt for these extraneous offenses was not proven as required by case law. *See Turner v. State,* 754 S.W.2d 668, 673 (Tex.Crim.App.1988). Additionally, Jones urges that the admission of these extraneous offenses violated the rules of evidence. *See* TEX.R.CRIM. EVID. 401–404.[1]

When dealing with alleged error in the admission of acts of extraneous conduct on the part of a defendant, we find the Court of Criminal Appeals cases of *Guzman, Rogers,* and *Montgomery* to be particularly enlightening. *See Guzman v. State,* 955 S.W.2d 85 (Tex.Crim.App.1997); *Rogers v. State,* 853 S.W.2d 29 (Tex.Crim.App.1993); *Montgomery v. State,* 810 S.W.2d 372 (Tex.Crim.App. 1990). *Montgomery* was the seminal case interpreting the evidentiary rules that Jones alleges were breached in the trial court. *See Montgomery,* 810 S.W.2d at 375–83; TEX. R.CRIM. EVID. 401–404. *Montgomery* concerned itself with the definition of relevant evidence, the admissibility or exclusion of that evidence, the role of the trial judge in determining admissibility questions under those rules, and the role of an appellate court in reviewing the trial judge's decision. *Id.*

---

1. **RULE 401. DEFINITION OF "RELEVANT EVIDENCE"**

"Relevant evidence" means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.

**RULE 402. RELEVANT EVIDENCE GENERALLY ADMISSIBLE; IRRELEVANT EVIDENCE INADMISSIBLE**

All relevant evidence is admissible, except as otherwise provided by constitution, by statute, by these rules or by other rules prescribed pursuant to statutory authority. Evidence which is not relevant is inadmissable.

**RULE 403. EXCLUSION OF RELEVANT EVIDENCE ON SPECIAL GROUNDS**

Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by consideration of undue delay, or needless presentation of cumulative evidence.

**RULE 404. CHARACTER EVIDENCE NOT ADMISSIBLE TO PROVE CONDUCT; EXCEPTIONS; OTHER CRIMES**

. . . .

**(b) Other Crimes, Wrongs, or Acts.** Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, provided, upon timely request by the accused, reasonable notice is given in advance of trial of intent to introduce in the State's case in chief such evidence other than that arising in the same transaction. TEX.R.CRIM. EVID. 401–404.

Under *Montgomery,* trial judges should first ask whether a reasonable person with some experience in the real world would believe that the particular piece of evidence is helpful in determining the truth or falsity of any fact that is of consequence. *Montgomery,* 810 S.W.2d at 376. If relevant to some issue of consequence in the case, extraneous conduct is ordinarily admissible and should only be excluded if the trial court finds that the probative value is substantially outweighed by the 1) prejudicial effect, 2) possibility of confusing or misleading the jury, or 3) delay or cumulation of evidence. *Id.* at 389. The case held that appellate courts should give great discretion to the trial courts in matters of relevancy and prejudicial effect, even to the extent that trial courts are given a limited right to be wrong as long as their decision is not "arbitrary or capricious." *Id.* at 380. A trial court's ruling on admissibility should not be disturbed simply because an appellate judge might decide a question differently that the trial judge. *Id.* Though appellate courts may conduct a de novo review of trial court determinations of mixed questions of law and fact that do not rest on a determination of credibility and demeanor, they should accord almost total deference to such a trial court's findings of fact and not disturb the ruling on appeal if it is within the "zone of reasonable disagreement." *Guzman,* 955 S.W.2d at 88; *Montgomery,* 810 S.W.2d at 391 (op. on reh'g).

In *Rogers,* the Court of Criminal Appeals added further analysis of the interplay of rules 401 through 404. *See Rogers,* 853 S.W.2d at 32–35. Noting that a trial court must first distinguish between "same transaction contextual evidence," which is evidence of other offenses connected with the primary offense, and "background contextual evidence," which is general background evidence, the Court of Criminal Appeals noted that "same transaction contextual evidence" is admissible not because it has any evidentiary value in and of itself, but because in narrating the events of the charged offense, it is impractical to avoid describing these other offenses. *Id.* at 33. "Same transaction contextual evidence" is deemed admissible where several crimes are intertwined or blended with one another. *See Mayes v. State,* 816 S.W.2d 79, 84–87 (Tex.Crim.App. 1991). This evidence is another exception under rule 404(b) and applies whether the "same transaction" is the commission of a primary offense or is an arrest. *Rogers,* 853 S.W.2d at 33 n. 6. Necessity is the reason for admitting evidence of the accused's acts, words, and conduct at the time of the offense in "same transaction contextual evidence" questions. *Id.* In other words, if narration of the primary offense would make little or no sense without bringing in the other offenses, then they should be admitted. *See Rogers,* 853 S.W.2d at 33; *Brown v. State,* 878 S.W.2d 695, 698 (Tex.App.—Fort Worth 1994), *aff'd,* 911 S.W.2d 744 (Tex.Crim.App. 1995), *overruled in part on other grounds by Howell v. State,* 906 S.W.2d 248, 251 (Tex. App.—Fort Worth 1995, pet. ref'd). On the other hand, "background contextual evidence," to be admissible, must have as its justification, a reason from the inexhaustible laundry list and that reason must then pass the rule 403 balancing test as laid out in *Montgomery. Montgomery,* 810 S.W.2d at 388–90; *see Rogers,* 853 S.W.2d at 32 & n. 3.

As to Jones's contention that the crime of burglary and the crimes for which the two warrants against him were outstanding were not clearly shown and further that he was not shown to be their perpetrator: We find that such a requirement exists in case law. *See Turner,* 754 S.W.2d at 673; *Landers v. State,* 519 S.W.2d 115, 120 (Tex. Crim.App.1974). Before an extraneous offense may be considered against an accused, there must be evidence sufficient to support a finding that the accused committed the conduct. *See* TEX.R.CRIM. EVID. 104(b), 404(b). The sufficiency standard to be met is that the commission of the offense must be proven beyond a reasonable doubt. *See George v. State,* 890 S.W.2d 73, 76 (Tex.Crim. App.1994). It is important, however, to distinguish just exactly what it is that must be proven beyond a reasonable doubt.

Here, the State was not attempting to introduce or prove an extraneous act for the purpose of showing intent, motive, identity, scheme, etc., as is the purpose in admitting

such acts as "background evidence." *Rogers,* 853 S.W.2d at 32 n. 3; *Montgomery,* 810 S.W.2d at 388. The evidence of the microwave being on the ground or carried by a suspect and of two outstanding warrants was more in the nature of "same transaction contextual evidence." *See Brown,* 878 S.W.2d at 698.

■ It seems to us that if the extraneous offense is admitted as background evidence and its purpose is to show scheme or identity for instance, then the entirety of the crime should be proven because it is the commission of the crime that makes "the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." TEX.R.CRIM. EVID. 401. If the extraneous offense is admitted as same transaction contextual evidence then its purpose is to put the "same transaction," the instant crime or instant arrest, in context, not to show that a defendant committed the crime he is charged with now because he also committed the extraneous crime and it is part of a common scheme or was committed in an identical "signature" manner. Thus, with "same transaction contextual evidence," it would seem necessary to prove, beyond a reasonable doubt, only the part of the extraneous acts that corresponded to the purpose for which the act became admissible.

■ For example, using the case at bar, the State was not attempting to prove that Jones committed the possession offense because he also committed an apartment burglary or wrote hot checks. The State was attempting to give context to Hall finding contraband in the seat of his police car by showing Jones being unexpectedly arrested, handcuffed, and placed in a squad car. These are circumstances that put the finding of the contraband in context and gave credence to the State's theory that Jones did not expect to be arrested and had no opportunity to secrete contraband before being placed in the squad car. As such, it seems to us, the State is only bound to prove that Jones was

in a position where he appeared to be one of the suspects that Hall was seeking out and then, as the results of the computer check came in, that Jones appeared to be wanted for two offenses. If the State proved, at least enough to pass the appellate standard of review that requires us to in some measure defer to a trial court's decision to admit evidence, that Jones was so positioned beyond a reasonable doubt, we believe that the State has met its burden under *George. George,* 890 S.W.2d at 76; *see also Montgomery,* 810 S.W.2d at 380.

■ Indeed, had the State gone forward and brought in the apartment tenant who was the owner of the microwave and proceeded to prove up a burglary beyond a reasonable doubt, it would have been introducing details that went far beyond the purpose for which this "same transaction contextual evidence" was admitted. The same would be true if the State had brought down the two merchants who were the complainants on the two hot check cases. Proving the entirety of these crimes would likely, in our view, run afoul of rule 403 and its balancing test of probative value being substantially outweighed by prejudicial effect. TEX. R.CRIM. EVID. 403.[2]

■ In this case it was the trial court's decision to admit Hall's testimony. The complained-of evidence is clearly "same transaction contextual evidence" in that it puts the actions of Hall and Malloy in context and is inexorably tied into the finding of the contraband in the police car. Without this evidence, the jury would have had to consider the finding of the contraband in a vacuum. Hall's testimony clearly showed that it was Jones who was in a position where he appeared to be one of the suspects Hall was seeking out, and that Jones appeared to be wanted for two offenses. This testimony is sufficient to prove, beyond a reasonable doubt, as much of the existence of the complained-of extraneous acts as was necessary. We find that the court's decision was at least within the "zone of reasonable disagreement"

---

2. If relevant to some issue of consequence in the case, evidence is ordinarily admissible and should only be excluded if the trial court finds that the probative value is substantially outweighed by the 1) prejudicial effect, 2) possibility of confusing or misleading, or 3) delay or cumulation. *See* TEX.R.CRIM. EVID. 403; *Montgomery,* 810 S.W.2d at 389.

and not one that could be characterized as arbitrary or capricious. *See Guzman,* 955 S.W.2d at 88; *Montgomery,* 810 S.W.2d at 391. We thus accord due deference to the trial court's rulings. Points one and two are overruled.

In point three, Jones maintains that the Arlington police officers lacked probable cause to stop him. The State points out that Jones did not object at trial to the propriety of the stop, did not file a motion to suppress, and stated he had no objection to the introduction of State's exhibit 3A, the methamphetamine. A defendant who fails to object to a search or seizure waives error. *See Calloway v. State,* 743 S.W.2d 645, 650 (Tex.Crim.App.1988). A defendant who affirmatively states that he has no objection to the introduction of the fruits of a search waives error. *See Jones v. State,* 833 S.W.2d 118, 126 (Tex.Crim.App.1992), *cert. denied,* 507 U.S. 921, 113 S.Ct. 1285, 122 L.Ed.2d 678 (1993); *Dean v. State,* 749 S.W.2d 80, 83 (Tex.Crim.App.1988).

Moreover, we believe that Hall needed only a reasonable suspicion, rather than probable cause, to detain Jones for the brief time it took to determine that there were outstanding warrants for Jones. A police officer may briefly stop a suspicious individual, or an individual under suspicious circumstances, in order to determine his identity or to maintain the status quo momentarily to obtain more information. *See Hoag v. State,* 728 S.W.2d 375, 380 (Tex. Crim.App.1987). The question of whether such a stop is a brief investigative detention or is an arrest must be determined from a totality of the circumstances, and even the handcuffing of a civilian may not serve as an arrest. *See Rhodes v. State,* 945 S.W.2d 115, 117–18 (Tex.Crim.App.), *cert. denied,* —— U.S. ——, 118 S.Ct. 236, 139 L.Ed.2d 167 (1997); *Mays v. State,* 726 S.W.2d 937, 943–44 (Tex.Crim.App.1986), *cert. denied,* 484 U.S. 1079, 108 S.Ct. 1059, 98 L.Ed.2d 1020 (1988). In a circumstance less than an ar-

rest, police need only a reasonable suspicion, that is, specific articulable facts that, in light of his experience and personal knowledge, together with inferences from those facts, would reasonably warrant the intrusion on the freedom of the citizen stopped. *See Gurrola v. State,* 877 S.W.2d 300, 302 (Tex. Crim.App.1994). Such an intrusion is warranted when the officer has a reasonable suspicion that some unusual activity is occurring or has occurred, that the detained person is connected to the activity, and that the activity is related to crime. *Id.* An arrest, on the other hand, requires probable cause to believe that a crime has occurred and that the arrested person is criminally responsible for the crime. *See Henry v. United States,* 361 U.S. 98, 103, 80 S.Ct. 168, 171, 4 L.Ed.2d 134, 139 (1959). Unlike a detention, an arrest will not be brief. *See Francis v. State,* 922 S.W.2d 176, 178 (Tex.Crim.App. 1996) (Baird, J., concurring). A detention can readily become an arrest. *See id.*

Here, in an area where apartment burglaries were a problem, Hall, an experienced police officer, saw two persons at 1 a.m. carrying a box-like object. Hall was in a marked police car, and the individuals seemed to flee when Hall turned around to observe them further; an action consistent with a furtive gesture. Soon thereafter, when Hall confronted Jones because Jones was on the path Hall thought the two suspects took, Jones at first said the two men went away but quickly admitted that he was one of the two men; an action consistent with having something to hide. A microwave oven, similar to the box-like object Hall previously observed being carried by one of the suspects, was abandoned on the ground very near where Jones was standing when Hall confronted him; an odd circumstance certainly consistent with possible criminal activity. We hold that the trial judge was within his discretion in finding that, in light of Hall's experience and personal knowledge, these circumstances created in Hall's mind a reasonable suspicion from specific articulable facts that some unusual activity was occur-

ring or had occurred, that Jones was connected to the activity, and the activity was related to crime. *See Gurrola*, 877 S.W.2d at 302. We further hold that the trial judge was within his discretion in finding that this reasonable suspicion reasonably warranted the investigative detention. *See id.* Point three is overruled.

The judgment of the trial court is affirmed.

# APPENDIX A

ARLINGTON POLICE DEPARTMENT
------------------------------
EVIDENCE TRANSMITTAL
------------------------------

Evidence Submitted to:  Forensic Consultant Services
------------------------------------------------------------------
------------------------------------------------------------------

CASE INFORMATION:

Lab#: *95·A·0408* Case#: 950034076    Type Case: POSS OF CONT SUBSTANCE

Victim/Complainant: STATE OF TEXAS

Defendant(s): JONES,ALVIN  √

Date Occurred: 03/14/95              Location:  ARLINGTON, TEXAS

Submitted By: *V. Griffin 1423*        Date: *5-15-95*  Time: *11:15*

Received By: _____           Submitted At: PROPERTY/EVIDENCE CONTROL
------------------------------------------------------------------
------------------------------------------------------------------

LIST OF ITEMS SUBMITTED:

.1 ENVELOPE REPORTEDLY CONTAINING CLEAR BAGGIE WITH POWDERY
SUBSTANCE WEIGHING 2.7 GRAMS, ITEM # 1.

# APPENDIX B

 *Forensic Consultant Services*

P.O. BOX 11668 • FORT WORTH, TX 76110 • FAX (817) 338-0908 • (817) 870-1710

EXAMINATION REPORT

LAB NO.:   95-A-0408      AGENCY NO.: 950034076      DATE:   3-15-95

VICTIM/COMPLAINANT/PLAINTIFF:   State of Texas

DEFENDANT(S):   Alvin Jones

TYPE CASE:   Controlled Substance

TO:   Arlington Police Department

LIST OF EVIDENCE:

Received 3-15-95, 11:15 a.m. at Arlington P.D. from V. Griffin:

    Sealed envelope containing plastic bag with powder

RESULTS OF EXAMINATIONS:

1.02 grams of powder containing methamphetamine and nicotinamide.

THOMAS R. EKIS    /    MAX COURTNEY
FORENSIC EXAMINER    /    LAB DIRECTOR

MC/TRE:mab