**Chon Patrick DIMAS, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 09–98–530CR.**

Court of Appeals of Texas, Beaumont.

Submitted Nov. 17, 1999.

Decided March 8, 2000.

Tom Brown, Livingston, for appellant.

John S. Holleman, Dist. Atty., William Lee Hon, Asst. Dist. Atty., Mark E. Brunner, Asst. Dist. Atty., Livingston, for state.

Before WALKER, C.J., BURGESS and STOVER, JJ.

## OPINION

EARL B. STOVER, Justice.

After a jury convicted appellant Chon Patrick Dimas ("Chon") of murder, he was sentenced by the trial court to seventy-five years in the Texas Department of Criminal

Justice—Institutional Division. On appeal Chon brings four issues.

## LEGAL AND FACTUAL SUFFICIENCY

■ In issues one and two, Chon contends the evidence is legally and factually insufficient to support a verdict that he caused the death of Joyce Worley.[1] In reviewing a legal sufficiency question, we must view the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *See Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). All the evidence is considered by the reviewing court, regardless of whether or not it was properly admitted. *See Johnson v. State,* 871 S.W.2d 183, 186 (Tex.Crim.App.1993). When a factual sufficiency issue is raised, we view the evidence without the prism of "in the light most favorable to the prosecution[,]" and we set "aside the verdict only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust." *Clewis v. State,* 922 S.W.2d 126, 129 (Tex.Crim.App.1996); *see also Santellan v. State,* 939 S.W.2d 155, 164 (Tex.Crim.App.1997).

■ In our sufficiency review, we are governed by the fact that the jury is the exclusive judge of the facts proved and the weight to be given to the testimony. *See* Tex.Code Crim. Proc. Ann. art. 38.04 (Vernon 1979). The jury may believe or disbelieve all or any part of a witness's testimony, even though the testimony has been contradicted. *See Sharp v. State,* 707 S.W.2d 611, 614 (Tex.Crim.App.1986). "[R]econciliation of conflicts in the evidence is within the exclusive province of the jury." *Jones v. State,* 944 S.W.2d 642, 647 (Tex.Crim.App.1996). The jurors are entitled "to draw reasonable inferences from basic facts to ultimate facts." *McIntosh v. State,* 855 S.W.2d 753, 763 (Tex.

App.—Dallas 1993, pet. ref'd). In both direct and circumstantial cases, the test is the same. *See Geesa v. State,* 820 S.W.2d 154, 159–61 (Tex.Crim.App.1991).

The State's theory of the case was that Chon Dimas shot Joyce Worley with a shotgun, dragged her body to a burn pile, and set the pile on fire. There being no eyewitnesses to confirm this theory, the evidence against Chon was entirely circumstantial.

Rudy Dimas, Chon's father, testified that he, Chon, and Joyce Worley, the victim, lived together in a trailer home on Joyce's land. Rudy last saw Joyce alive on June 2, 1998, at the trailer. Dressed in her nurse's uniform, she was ready to go to work on what he understood was to be a double shift. Another witness, Cynthia Brewer, indicated she saw Joyce at the post office on the morning of June 4, 1998, between 9:00 and 9:30 a.m.

After spending the night of June 2 at the trailer, Rudy went fishing with neighbors on June 3 and arrived back at the trailer at approximately 3:00 p.m. Around 5:00 p.m. on June 3, he drove to Orange to see Scottie Church, a female friend, and spent the night at her home. Chon called Rudy the morning of June 4 and told Rudy he needed a ride to work. After leaving Orange around noon on June 4 and arriving home around 3:00 p.m., Rudy noticed a fire "smoldering down" on his neighbors' property. He testified that if it had been burning when he left home on June 3, he would have noticed it. The county was under a burn ban at the time. According to Rudy, prior to being burned, the "great big pile" of trees, limbs, and stumps had been about twenty feet high, but by the time he arrived home, it was "burned ... pretty much down to the great big tree trunks."

When Rudy arrived home, Chon was at the trailer. Rudy asked Chon if Joyce had been home, and Chon indicated she had

---

1. A person commits the offense of murder if he intentionally or knowingly causes the death of an individual. *See* Tex. Pen.Code Ann. § 19.02(b)(1) (Vernon 1994).

been. According to Rudy, Chon was the only person that he knew had been at their home during that period of time. Rudy indicated he did not see anyone else on his property when he came home on June 4; however, he also testified he observed tire tracks and he thought he had seen a vehicle on the neighbor's property. Although the width of the marks was consistent with the width between the tires on Joyce's car, Officer Dennis Allen, one of the investigators, could not say the marks came from her vehicle. Around 4:00 or 5:00 p.m., Rudy took Chon to work.

On the evening of June 4, Rudy walked down by the burn pile. There he saw some gun shells (identified by experts as shotgun shells) on the ground near the burn pile and also observed dogs licking on a spot that he thought might have been blood. Various objects, including a yellow marker, eyeglasses, and pens, were also found near the burn pile and resembled items belonging to Joyce. From June 4 through June 6, Joyce's car remained parked by Rudy's shed. Inside the car trunk, Rudy found a shotgun, later determined to be a Revelation pump action 12 gauge shotgun. He testified he himself had never seen the shotgun, and he never knew Joyce to have one. On Sunday, June 7, Rudy noticed the bones in the pile of ashes, but did not know whether they were of animal or human origin.[2] On Tuesday morning, June 9, Rudy called the police to report that Joyce was missing.

The burn pile was located on William and Shirley Fontaine's land, which adjoined Joyce's property. William Fontaine testified he had been clearing trees in the area, and there was a pile of brush on his property to be burned. Shirley Fontaine testified no one had been given permission to burn the pile. A few weeks before the murder, Fontaine recalled that he heard Chon "hollering at [Joyce] in a very rude voice that she had a phone call." "By the way Chon talked, ... there was no love in between the two like, you know, like what would be with even a stepmother or whatever. There was nothing there." In describing Joyce's personality, Rudy indicated she was not a "people person," and she had a problem getting along with people at work.

Fontaine's wife Shirley testified there was a chained and locked iron gate at the entrance to their property. After being away from the property for some weeks, they returned on June 9 and found the gate still chained. Shirley indicated that if someone was on Rudy's property, it was possible to drive onto the Fontaine property, without having to go through Fontaine's gate.

Gene Zunker, a retired police officer and former chief firearms instructor with the city of Baytown, lived adjacent to the Fontaine property. On the morning of June 4, he was working in his barn at approximately 11:00 a.m. when he heard gunshots. Because of "their recoil," he knew the shots were in close proximity and were indicative of a large caliber weapon, rifle, or shotgun. It took him approximately ten to fifteen minutes to go inside his house, change his shoes, and retrieve a pistol. Once outside again, he walked until he came to the end of his property line and saw a burn pile on the Fontaine property. He initially observed six or seven feet of smoke, but as he walked down the fence line, the smoke had started into flames some "25 to 30 feet in the air[.]" Zunker indicated that even though the area was heavily wooded, he was able to see the area by the burn pile, because Fontaine "tends to cut his trees down to below waist level ... to attract the deer or whatever reason. And you can see in different places where he has cleared out, and in that particular area ... is one of those clearing areas." Estimating that he was approximately sixty to seventy yards away,

2. Dr. David Glassman, an anthropologist, determined the bones were of human origin. Because the bones were severely burned and highly fragmentary, he could not determine the cause of death.

Zunker testified he saw a "young man out there at the flames[.]"

According to Zunker, the person he saw at the burn pile was a young, white male, 5'8" to 5'9" tall, 125 to 135 pounds, and fourteen to eighteen years old. He wore a light-colored tank top. Zunker testified the person was carrying five-gallon white buckets back and forth and pouring a liquid from them onto the fire; in Zunker's opinion, he was trying to contain the fire. According to Officer Allen, there were five-gallon white buckets placed under the corners of Rudy's shed and trailer to catch rainwater. On June 15, 1998, Zunker viewed a line-up at the sheriff's department and identified Chon as the young man at the fire. According to Texas Ranger Kenneth Hammack, the five other persons in the line-up met the same general description as Chon.

A fire investigator called by the State testified that a canine trained to detect flammable substances alerted on nine different areas in the small area where the skeletal remains were found. Based on the location of the flammable liquid, the fire investigator assumed the skeletal remains were doused with some sort of flammable liquid to expedite the burning process.

On June 10, Officer Allen and Ranger Hammack conducted an "experiment" to ascertain what could be seen by Allen from the point at which Zunker stood when Zunker observed the man at the burn pile on June 4. Ranger Hammack was stationed at the burn pile during Allen's observations. According to Allen, from Zunker's vantage point on the day of the offense, there would have been no problem seeing someone in the general area of the burn pile. Allen stated he had no difficulty in determining a person's general height, body build, hair color, and approximate age from that distance and location.

During cross-examination, however, Ranger Hammack was questioned concerning a police report that he had prepared. The report indicated the location specified by Zunker as the spot where he (Zunker) stood would have actually placed the fire between Zunker and the male suspect. However, Hammack also indicated that at the time the experiment was conducted "they did not have the luxury of a fire being there." The import of Hammack's testimony is that Zunker may have been off twenty-five feet in pinpointing where he stood on the day he allegedly saw the person at the burn pile.

Jimmy Malmay, an officer assigned to the crime laboratory, testified he processed various exhibits in the case for latent prints, but found no prints on any of the objects. According to Malmay, the lack of fingerprints was not unusual.

In attempting to prove its theory that Chon shot Joyce with a shotgun before dragging her body to the burn pile, the State introduced evidence concerning a robbery that occurred at the residence of Curtis and Joy Allemang on May 28, 1998, approximately a week before Joyce's murder. The Allemang's property backs up to Joyce's land, and various trails run through the woods between the two properties.

Joy Allemang testified that when she returned home on May 28, she discovered their house had been robbed. Although there were other guns, jewelry, and stereo equipment in the house, both Curtis and Joy Allemang testified that the only items taken were a shotgun and some shotgun shells. The shotgun taken from the Allemang home was later found in the trunk of Joyce Worley's car and identified by Curtis Allemang as the stolen shotgun. Entrance to the Allemang house was gained through a window underneath which were two black shoe marks consistent with a black, soft-sole tennis shoe. Investigator Allen retrieved a pair of black and white tennis shoes from Chon and determined the tread design on those shoes and the marks left below the window were consistent and similar. However, as Allen also stated during cross examination,

shoes with black rubber bottoms can be found in many households. In addition to his testimony regarding the shoes, Allen also stated that entrance could only be gained by a small, agile person. Zunker testified to Chon's size as being 5'8" to 5'9" and 125 to 135 pounds, and the jury observed Chon first hand at trial.

Both Joy and her husband Curtis testified that Chon had last been in their home some two or three years ago. Although Joy had not talked to Chon in several years, he called the Allemang home the day after the break-in and asked her if she had lost a little brown dog. Joy thought the call was strange.

The trial court also admitted into evidence the written statement given by Chon to the police during the investigation of Joyce's disappearance. In his statement he indicated he last saw Joyce on Thursday morning (June 4, 1998) at the trailer. After she began making tuna fish and watching her soap opera, Chon indicated he went to his room and turned on the radio. Approximately thirty minutes later, he heard the dogs barking, looked out the window, and saw a white truck pull up. According to Chon's statement, "Joyce came out and sat in the passenger's seat." Chon then closed the blinds to his window and turned up the radio. When he later went outside, he noticed that although Joyce's car was still there, she was not.

■ The evidence in the case, though almost entirely circumstantial, is sufficient to support the conviction of Chon Dimas for murder. The identity of a perpetrator may be proved by direct or circumstantial evidence. *See Earls v. State,* 707 S.W.2d 82, 85 (Tex.Crim.App.1986). Chon's own statement places him at the trailer with Joyce Worley on the morning of June 4, the same day that Rudy Dimas noticed the bones in the burn pile. Based on the following evidence, we conclude the jury could have found the essential elements necessary for a conviction of murder: the theft of the shotgun and shells from the Allemang residence; similarity of the scuff

marks below the window and the tread design on Chon's shoes; Chon's presence at the trailer with Joyce on the day of the murder; the presence of blood in close proximity to the burn pile; the shotgun belonging to the Allemangs found in the trunk of Joyce's car; the spent shotgun shells found near the burn pile and the blood spot; the bones in the burn pile; Chon's past visits to the Allemang house; and Zunker's identification of Chon as the man at the burn pile shortly after the shots were fired.

Although appellant attempted to discredit the majority of the evidence against him, the jury could have chosen to believe the testimony of the State's witnesses and to disbelieve the inferences Chon raised. Even though Chon tried to raise questions regarding another vehicle at the scene and suggested Joyce left in that vehicle, the jury, as the sole judge of the credibility of the witnesses and the weight to be given the evidence, could have disregarded appellant's evidence as weak and unreliable. From the evidence presented, a rational jury could have inferred that the elements necessary to prove the offense of murder beyond a reasonable doubt were present. Furthermore, after examining all of the evidence impartially, without the prism of "in the light most favorable to the verdict," we conclude the verdict is not so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *See Clewis,* 922 S.W.2d at 129. The evidence is both legally and factually sufficient to support the verdict. Issues one and two are overruled.

## ADMISSIBILITY OF EXTRANEOUS OFFENSE

■ In issue three Chon contends the trial court erred in admitting evidence of the burglary, "because the evidence ... does not establish beyond a reasonable doubt that [he] committed the burglary." Both the State and appellant treat the burglary as an extraneous offense under TEX.R. EVID. 404(b). Whether one views it

as extraneous offense evidence under Rule 404(b), however, or as "same transaction contextual evidence," there must be evidence sufficient to support a finding that the accused committed the conduct before the offense may be considered against the defendant. *See Turner v. State,* 754 S.W.2d 668, 673 (Tex.Crim.App.1988); *Jones v. State,* 962 S.W.2d 158, 165 (Tex. App.—Fort Worth 1998, no pet.); *see also* Tex.R. Evid. 104(b), 404(b).

The sufficiency standard to be met is beyond a reasonable doubt. *See George v. State,* 890 S.W.2d 73, 76 (Tex.Crim.App. 1994). As pointed out in *Jones,* "it is important … to distinguish just exactly what it is that must be proven beyond a reasonable doubt." *Jones,* 962 S.W.2d at 165. Here, the State was not offering the evidence of the burglary merely to put the murder in context. On the contrary, the State sought to admit the evidence of the theft of the shotgun during the burglary to prove such 404(b) exceptions as intent, identity, preparation, and scheme. In short, the State was attempting to prove that Chon committed the murder by showing he also stole the gun that killed Joyce Worley. Under such circumstances, where the purpose of the extraneous offense evidence is to show intent, scheme, or identity, for example, then the entirety of the crime (in the instant case, burglary) should be proven. *See Jones,* 962 S.W.2d at 166.

The evidence offered by the State concerning the burglary of the Allemang home is the following:

- The Allemangs lived next to the property on which Chon, Joyce, and Rudy lived, and their property was easily accessible to Chon.
- A Revelation 12 gauge shotgun and shotgun shells were stolen from the Allemang home approximately a week before Joyce Worley's disappearance.
- The shotgun was found in Joyce's car which was parked near Rudy's shed. Shells of a caliber that could be shot

from the shotgun were found near the burn pile.
- Scuff marks that were similar to and consistent with the tread on Chon's shoes were found near the entry window of the Allemang house.
- Only a person of slim build and agility could have crawled through the small window used by the burglar. Chon was identified and described by Zunker as being 5'8" to 5'9" tall and weighing 125 to 135 pounds.
- Chon had been in the Allemang house some two to three years earlier, and the guns were kept in plain view for anyone to see.
- Chon called Mrs. Allemang the day after the burglary to inquire if she had lost a dog.
- No fingerprints were found at the Allemang house, on the shotgun, or on Joyce's car, and no tests were done on Chon's shoes to attempt to match the tread design with the scuff marks left on the exterior wall of the Allemang home.

The elements of burglary of a habitation are: (1) a person, (2) without the effective consent of the owner, (3) enters a habitation not then open to the public (4) with the intent to commit felony or theft. *See* Act of May 23, 1973, 63rd Leg., R.S., ch. 399, 1973 Tex. Gen. Laws 883, 926 (amended 1993, 1995, and 1999) (current version at Tex. Pen.Code Ann. § 30.02(a)(1) (Vernon Supp.2000)). Burglary can be proven by circumstantial evidence. *See Mabra v. State,* 997 S.W.2d 770, 774 (Tex.App.— Amarillo 1999, pet. ref'd). Mere presence of an accused at the scene of an offense is not alone sufficient to support a conviction, although it is a circumstance tending to prove guilt which, combined with other facts, may suffice to show the accused was a participant. *See id.*

The evidence indicating Chon committed the burglary is entirely circumstantial. As noted above, however, the test for circumstantial evidence is the same as for direct

evidence. We conclude a rational trier of fact, viewing the evidence of the burglary in the light most favorable to the prosecution, could have found the elements of the offense beyond a reasonable doubt. The jury heard testimony that the gun stolen from the Allemang residence was the same gun found in the trunk of Joyce Worley's car. In addition, they heard the officer's testimony concerning the similarity of the tread marks on Chon's shoes and the imprint of the scuff marks below the window at the Allemang house. The members of the jury also inspected Chon's shoes, viewed the scuff marks as exhibited on the video tape, and were free to make comparisons. This evidence, along with evidence regarding the size of the person gaining entrance to the Allemang residence, the presence of Chon in the home some two to three years earlier, and Chon's phone call to Mrs. Allemang the day after the burglary, would allow a rational trier of fact to conclude that Chon had committed the burglary. Because we find the commission of the extraneous offense was proved beyond a reasonable doubt, the trial court did not abuse its discretion in admitting the evidence of the burglary. We overrule issue three.

■ In issue four, Chon contends the admission of the burglary was more prejudicial than probative under Tex.R. Evid. 403. In *Santellan*, 939 S.W.2d at 169, the Court of Criminal Appeals set out four factors to be employed in the balancing test under Rule 403:

(1) how compellingly the extraneous offense evidence serves to make a fact of consequence more or less probable—a factor which is related to the strength of the evidence presented by the proponent to show the defendant in fact committed the extraneous offense;

(2) the potential the other offense evidence has to impress the jury "in some irrational but nevertheless indelible way";

(3) the time the proponent will need to develop the evidence, during which the jury will be distracted from consideration of the indicted offense;

(4) the force of the proponent's need for this evidence to prove a fact of consequence, i.e., does the proponent have other probative evidence available to him to help establish this fact, and is this fact related to an issue in dispute.

*Id.* (footnote omitted). In analyzing the factors, we note that the theft of the shotgun, alleged to have been the murder weapon, served to make more probable a fact of consequence—namely that Chon had the intent, the plan, the preparation, and the scheme to steal the gun to commit the murder. Proof of Chon's theft of the shotgun was proof tending to show he committed the murder. This factor mitigates in favor of the State. The evidence presented by the prosecution to show Chon in fact committed the burglary was all circumstantial, but nonetheless sufficient to allow a rational trier of fact to find all the elements of the offense beyond a reasonable doubt. Although evidence of an extraneous offense invariably casts the defendant in a negative light, when the extraneous offense is of a character that pales in comparison to the primary offense, the Court of Criminal Appeals has upheld the admission of the extraneous offense evidence. *See id.* at 169–170 (Extraneous offense of abuse of victim's corpse was not found to be more prejudicial than probative.). In comparison to the remainder of the case, the State did not take a disproportional amount of time in presenting the evidence of the burglary. Five witnesses—Mr. and Mrs. Allemang, Officers Robert Thomas and Dennis Allen, and Barbara Swanner, a neighbor—testified regarding the burglary.[3] In compari-

---

**3.** Barbara Swanner, a neighbor of the Allemangs and Dimases, testified that during a conversation on June 2, Chon had asked if they knew who committed the burglary. She informed Chon "[t]hey had no idea." That was the extent of their conversation concerning the burglary.

son to the thirty-five other witnesses put on by the State during the guilt/innocence phase, the State took a minimal amount of time in developing the burglary evidence. Since the case was entirely circumstantial, the State had a compelling need to present the burglary evidence. The burglary evidence was of vital importance to the State's contention that Chon stole the shotgun, shot Joyce with the gun, dragged her body to the burn pile, and then set it on fire. There was no other compelling evidence showing intent, preparation, or scheme. The danger of prejudice from the admission of the burglary is outweighed by the probative value of evidence that Chon stole the weapon that was allegedly used to murder Joyce.

In light of the factors set out above, we find the trial court did not abuse its discretion in admitting the extraneous offense evidence. The danger of undue prejudice does not outweigh the probative value of the evidence, and the trial court's ruling was at least within the zone of reasonable disagreement. *See Montgomery v. State*, 810 S.W.2d 372, 391 (Tex.Crim.App.1990). Issue four is overruled.

The judgment is affirmed.