

# COURT OF APPEALS

## SECOND DISTRICT OF TEXAS
### FORT WORTH

---

**NO. 2-07-419-CR**

VASSA HYMAN A/K/A                                             APPELLANT
HYMAN VASSA

V.

THE STATE OF TEXAS                                               STATE

------------

FROM CRIMINAL DISTRICT COURT NO. 1 OF TARRANT COUNTY

------------

## MEMORANDUM OPINION[1]

------------

### I. Introduction

---

[1] *See* TEX. R. APP. P. 47.4.

In three issues, Appellant Vassa Hyman a/k/a Hyman Vassa appeals his conviction for possession of more than four ounces but less than five pounds of marijuana.[2]  We affirm.

## II. Factual and Procedural History

The testimony at the suppression hearing and at trial was essentially the same.  Hyman testified that he borrowed a white Ford Taurus around 6 p.m. on November 19, 2006, and that the car ran out of gas on Bowen Road.[3]  Hyman got out of the car and turned on his hazard lights.  Another motorist stopped to assist him and drove him to Wal-Mart, where Hyman purchased a gas can.  Another Good Samaritan helped him with the gas and gave him a ride back to the car.

Around 7:15 p.m., Dalworthington Gardens police officer Michael Thompson, who was on patrol in the area, observed the white Ford Taurus stopped in the outside lane of traffic on Bowen Road, with its hazard lights turned on and its headlights turned off.  Officer Thompson testified that he assumed that the vehicle had a flat tire or had run out of gas, so he stopped his

---

[2] *See* TEX. HEALTH & SAFETY CODE ANN. § 481.121(a) & (b)(3) (Vernon 2008).

[3] That portion of Bowen Road, in Dalworthington Gardens, has four lanes, two northbound and two southbound, separated by a center turn lane, and no shoulder.

marked patrol car behind the vehicle, which was impeding traffic and creating a road hazard, to assist the driver. He activated his patrol car's overhead lights and, as he approached the vehicle, he saw that no one was in the car. Officer Thompson testified that the driver's window was down and that he "smell[ed] a strong [odor] of alcohol and marijuana coming from the car." He radioed his partner, Corporal Greg Petty, to look for anyone on foot because he was concerned that the driver might be intoxicated and might stumble into traffic.

Corporal Petty, in a separate patrol car, was unable to find any pedestrians in the area. The two officers called a tow truck to remove the car. Corporal Petty made the decision to remove the Taurus from the roadway and to have it impounded.

Before the tow truck arrived, Officer Thompson began inventorying the Taurus, which he testified is the department's standard procedure when impounding a vehicle. Inside the vehicle, he found a partially empty bottle of Mad Dog 20/20, an alcoholic beverage; some marijuana in the cup holder; and the remnants of a marijuana cigarette. Officer Thompson testified that, as soon as he opened the car's trunk, "a strong smell of marijuana . . . hit [him] in the face. It almost knocked [him] down it was so strong." He saw a white Wal-Mart sack in the trunk, which contained approximately fifty clear plastic bags

3

holding a green leafy substance. Officer Thompson determined that they were "dime" bags of marijuana.[4]

Officer Thompson finished the inventory. While he waited for the tow truck to finish, he saw a red pick-up truck slow down and stop in the center turn lane beside the Taurus. He testified that he saw Hyman sitting in the bed of the truck, wearing shorts and a T-shirt, which he noted was unusual for a cold November night. Both officers testified that, as the truck came to a stop, Hyman, who was holding a gas can, leaned out towards the driver's side window and motioned for the driver to keep going. At the time, the tow truck was in front of the Taurus and the two marked police vehicles with flashing lights were behind it.

Hyman testified that the Good Samaritan did not come to a stop. He testified that she "pulled over into, like, the middle lane because it's the corner right here where she was going to turn around, and I was like, 'No. Don't stop right here because there's a lot of traffic,' and she went up to the corner and turned."

Officer Thompson testified that, because he thought the situation was odd, he turned off his patrol car's overhead lights and followed the pick-up

---

[4] A "dime bag" is a packaged amount of marijuana that sells for $10 on the street.

4

truck. The driver turned the pick-up truck onto the first available side street.

He testified that the truck stopped in the middle of the side street and that

Hyman jumped out of the bed of the truck, holding the gas can in one hand and

a yet-to-be-identified object in the other hand.[5]

Officer Thompson testified that he activated his overhead lights, and

Hyman turned and faced the patrol car. He testified that he drew his pistol,

ordered Hyman to lie down on the ground, and then handcuffed him. Officer

Thompson stated the purpose for detaining Hyman was "to further investigate

if that was his vehicle we were . . . impounding" and to determine if he was in

possession of the marijuana inside the Taurus. Hyman possessed the key to

the Taurus and admitted to driving the car when it ran out of gas. Corporal

Petty arrived and read Hyman his *Miranda* rights.[6] Officer Thompson arrested

Hyman and transported him to the Dalworthington Gardens Jail. At the police

station, Corporal Petty again read Hyman's rights to him, and Hyman dictated

and signed a written statement to the effect that he knowingly possessed the

marijuana.[7]

---

[5] Officer Thompson testified that the object turned out to be a handful of cash in the amount of $492.

[6] *See Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602 (1966).

[7] The pertinent portion states, "[A] Hispanic male driving a [T]hunder bird pulled beside me. He gave me a bag of weed to sell for him. He told me

5

Hyman filed a pretrial motion to suppress the marijuana and the written statement. He alleged that Corporal Petty told him that the case would be filed as a misdemeanor punishable by up to ninety days' imprisonment if he signed the statement, but that it would be filed as a felony punishable by up to fifteen years in prison if he refused. At the suppression hearing, Corporal Petty denied having made any threat or promise regarding what type of charges would be made against Hyman and testified that he did not know what offenses Hyman would be charged with at the time Hyman signed the statement because he did not know the exact quantity of marijuana that Hyman had in the car. The trial court denied the motion to suppress.

When the State offered the marijuana, the lab technician's stipulated testimony about the marijuana, and the written statement into evidence during trial, Hyman's counsel responded, "without objection," to each item. The jury found Hyman guilty and assessed punishment at six years' confinement. This appeal followed.

### III. Motion to Suppress

In his first issue, Hyman complains that the trial court erred by denying the motion to suppress with regard to the marijuana and lab results "because

---

to bring him back $350 dollars or something." The rest of the statement detailed his problems with his girlfriend and the Taurus running out of gas.

6

the police performed an investigative detention of [him] without reasonable suspicion that [he] had broken the law."

## A. Standard of Review

We review a trial court's ruling on a motion to suppress evidence under a bifurcated standard of review. *Carmouche v. State*, 10 S.W.3d 323, 327 (Tex. Crim. App. 2000); *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). In reviewing the trial court's decision, we do not engage in our own factual review. *Romero v. State*, 800 S.W.2d 539, 543 (Tex. Crim. App. 1990); *Best v. State*, 118 S.W.3d 857, 861 (Tex. App.—Fort Worth 2003, no pet.). The trial judge is the sole trier of fact and judge of the credibility of the witnesses and the weight to be given their testimony. *State v. Ross*, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000); *State v. Ballard*, 987 S.W.2d 889, 891 (Tex. Crim. App. 1999). Therefore, we give almost total deference to the trial court's rulings on (1) questions of historical fact, even if the trial court's determination of those facts was not based on an evaluation of credibility and demeanor, and (2) application-of-law-to-fact questions that turn on an evaluation of credibility and demeanor. *Montanez v. State*, 195 S.W.3d 101, 108–09 (Tex. Crim. App. 2006); *Johnson v. State*, 68 S.W.3d 644, 652–53 (Tex. Crim. App. 2002); *State v. Ballman*, 157 S.W.3d 65, 68 (Tex. App.—Fort Worth 2004, pet. ref'd). But when the trial court's rulings do not turn on the

credibility and demeanor of the witnesses, we review de novo a trial court's rulings on mixed questions of law and fact. *Estrada v. State*, 154 S.W.3d 604, 607 (Tex. Crim. App. 2005); *Johnson*, 68 S.W.3d at 652–53.

Stated another way, when reviewing the trial court's ruling on a motion to suppress, we must view the evidence in the light most favorable to the trial court's ruling. *State v. Kelly*, 204 S.W.3d 808, 818 (Tex. Crim. App. 2006). When, as here, the record is silent on the reasons for the trial court's ruling, or when there are no explicit fact findings and neither party timely requested findings and conclusions from the trial court, we imply the necessary fact findings that would support the trial court's ruling if the evidence, viewed in the light most favorable to the trial court's ruling, supports those findings. *Id*. at 819. We then review the trial court's legal ruling de novo unless the implied fact findings supported by the record are also dispositive of the legal ruling. *Id*.

We must uphold the trial court's ruling if it is supported by the record and correct under any theory of law applicable to the case even if the trial court gave the wrong reason for its ruling. *Armendariz v. State*, 123 S.W.3d 401, 404 (Tex. Crim. App. 2003), *cert. denied*, 541 U.S. 974 (2004); *Ross*, 32 S.W.3d at 856; *Romero*, 800 S.W.2d at 543.

Furthermore, it is well-settled that when a pretrial motion to suppress evidence is overruled, the accused need not subsequently object to the

8

admission of the same evidence at trial to preserve error. *Moraguez v. State*, 701 S.W.2d 902, 904 (Tex. Crim. App. 1986). However, when the accused affirmatively accepts previously challenged evidence by stating that he has no objection when the evidence is offered at trial, any error is waived. *Swain v. State*, 181 S.W.3d 359, 368 (Tex. Crim. App. 2005), *cert. denied*, 127 S. Ct. 145 (2006); *Moraguez*, 701 S.W.2d at 904; *Jones v. State*, 962 S.W.2d 158, 167 (Tex. App.—Fort Worth 1998, no pet.).

**B. Analysis**

The trial court denied Hyman's motion to suppress and proceeded with the trial. When the State sought to admit the marijuana and the stipulated-to lab report into evidence at trial, Hyman's counsel replied, "without objection." Hyman argues that only the exact phrase, "no objection," waives the error. We find his argument unpersuasive because only an affirmative acceptance is required to waive the error. *See Brown v. State*, 183 S.W.3d 728, 741 (Tex. App.—Houston [1st Dist.] 2005, pet. ref'd).

Additionally, even if Hyman had properly preserved error, the trial court did not err by denying his motion to suppress. "[I]nventories pursuant to standard police procedures are reasonable" under the Fourth Amendment. *South Dakota v. Opperman*, 428 U.S. 364, 372, 376, 96 S. Ct. 3092, 3098–100 (1976); *see also Benavides v. State*, 600 S.W.2d 809, 810, 812

(Tex. Crim. App. 1980) (requiring a lawful impoundment for a lawful inventory search and stating that such a seizure is authorized when there is evidence "that the car was impeding the flow of traffic or that it was a danger to public safety."). The purpose of an inventory search is to protect the owner's property while it is in police custody, to protect the police against claims or disputes over lost or stolen property, and to protect the police from potential dangers. *Kelley v. State*, 677 S.W.2d 34, 37 (Tex. Crim. App. 1984); *Dart v. State*, 798 S.W.2d 379, 380 (Tex. App.—Fort Worth 1990, pet. ref'd); *see also Robertson v. State*, 541 S.W.2d 608, 611 (Tex. Crim. App. 1976) (holding that, after the vehicle's injured owner had been taken to the hospital, the police had the authority to seize and conduct an inventory search of a wrecked vehicle before having it removed from the street), *cert. denied*, 429 U.S. 1109 (1977).

Hyman does not challenge the validity of the seizure and search of the Taurus. Instead, Hyman claims that the police detained *him* without reasonable suspicion in violation of the Fourth Amendment, when Officer Thompson ordered him to lie down and handcuffed him, such that the marijuana should have been suppressed. However, contrary to the usual order of events, i.e., the seizure of a person followed by the search and discovery of contraband in the person's vehicle, by the time that Officer Thompson detained Hyman, the officers had already discovered the marijuana pursuant to their decision to

10

impound and to conduct an inventory search, the legitimacy of which Hyman

does not question.[8]

At the suppression hearing, both officers testified that it was their normal

practice and procedure to inventory a vehicle before having it towed.  When

asked why he inventoried the vehicle, Officer Thompson testified,

> Well, I was going to tow it and have it impounded because it was
> in the middle lane of traffic and a hazard to other motorists.  Upon
> doing that, we inventory the vehicles to make sure and jot down
> and write any valuables that are in the car in case later down the
> road when the owner of the vehicle picks it up if they can say—you
> know, if they come back and say, well, there was a CD player in
> there, but now [there's] not.  We can—We have, you know, a list
> of everything that was in that vehicle when it was in our
> possession.

*See Kelley*, 677 S.W.2d at 37; *Dart*, 798 S.W.2d at 380*; Robertson*, 541

S.W.2d at 610–11.  Corporal Petty testified that the Taurus was abandoned in

the roadway, obstructing traffic.  *See Benavides*, 600 S.W.2d at 811–12.

The trial court, as sole trier of fact and judge of the witnesses' credibility

during the suppression hearing, could have reasonably chosen to credit the

officers' testimony about their decision to inventory the apparently abandoned

vehicle and their subsequent discovery of marijuana.  *See Ross*, 32 S.W.3d at

---

[8] And there is no seizure under the Fourth Amendment when police take possession of property abandoned independent of police misconduct.  *See McDuff v. State*, 939 S.W.2d 607, 616 (Tex. Crim. App.), *cert. denied*, 522 U.S. 844 (1997).

11

855. And the totality of the circumstances occurring after the discovery of the marijuana, as described by the officers and contradicted by Hyman—Hyman's appearance in the back of a truck that slowed or stopped near the defunct, marijuana-filled Taurus, his gas can, and his encouragement to the driver to bypass the Taurus upon viewing the two marked police vehicles—could have given the officers a reasonable suspicion that Hyman was somehow connected to the Taurus sufficient to detain him to investigate. *See Terry v. Ohio*, 392 U.S. 1, 21–22, 88 S. Ct. 1868, 1880 (1968); *Garcia v. State*, 43 S.W.3d 527, 530 (Tex. Crim. App. 2001). Therefore, the trial court did not err by denying Hyman's motion to suppress, and we overrule his first issue.

## IV. Ineffective Assistance of Counsel

In his second and third issues, Hyman contends that his trial counsel's assistance was ineffective because he stated, "without objection," each time the State sought to introduce the marijuana, the lab report, and the written confession into evidence.

### A. Standard of Review

To establish ineffective assistance of counsel, an appellant must show by a preponderance of the evidence that his counsel's representation fell below the standard of prevailing professional norms and that there is a reasonable probability that, but for counsel's deficiency, the result of the trial would have

12

been different. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984); *Salinas v. State*, 163 S.W.3d 734, 740 (Tex. Crim. App. 2005); *Mallett v. State*, 65 S.W.3d 59, 62–63 (Tex. Crim. App. 2001); *Thompson v. State*, 9 S.W.3d 808, 812 (Tex. Crim. App. 1999).

In evaluating the effectiveness of counsel under the first prong, we look to the totality of the representation and the particular circumstances of each case. *Thompson*, 9 S.W.3d at 813. The issue is whether counsel's assistance was reasonable under all the circumstances and prevailing professional norms at the time of the alleged error. *See Strickland*, 466 U.S. at 688–89, 104 S. Ct. at 2065. Review of counsel's representation is highly deferential, and the reviewing court indulges a strong presumption that counsel's conduct fell within a wide range of reasonable representation. *Salinas*, 163 S.W.3d at 740; *Mallett*, 65 S.W.3d at 63. A reviewing court will rarely be in a position on direct appeal to fairly evaluate the merits of an ineffective assistance claim. *Thompson*, 9 S.W.3d at 813–14. "In the majority of cases, the record on direct appeal is undeveloped and cannot adequately reflect the motives behind trial counsel's actions." *Salinas*, 163 S.W.3d at 740 (quoting *Mallett*, 65 S.W.3d at 63). To overcome the presumption of reasonable professional assistance, "any allegation of ineffectiveness must be firmly founded in the record, and the record must affirmatively demonstrate the alleged

13

ineffectiveness." *Id.*, (quoting *Thompson*, 9 S.W.3d at 813). It is not appropriate for an appellate court to simply infer ineffective assistance based upon unclear portions of the record. *Mata v. State*, 226 S.W.3d 425, 432 (Tex. Crim. App. 2007).

The second prong of *Strickland* requires a showing that counsel's errors were so serious that they deprived the defendant of a fair trial, i.e., a trial whose result is reliable. *Strickland,* 466 U.S. at 687, 104 S. Ct. at 2064. In other words, the appellant must show there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* at 694, 104 S. Ct. at 2068. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id.,* 104 S. Ct. at 2068. The ultimate focus of our inquiry must be on the fundamental fairness of the proceeding whose result is being challenged. *Id.* at 697, 104 S. Ct. at 2070.

## B. Analysis

Hyman argues that his counsel's trial strategy "was to suppress the marijuana found in the abandoned vehicle" and the written statement, as shown by his filing a motion to suppress. Hyman claims that his counsel's affirmative acceptance of the marijuana, the lab report, and the written statement undermined his trial strategy and so was objectively unreasonable.

14

We have already concluded that the trial court did not err by denying Hyman's motion to suppress—a question of the admissibility of evidence—such that any subsequent alleged professional errors by Hyman's trial counsel with regard to that evidence was harmless. *See Holmes v. State*, 248 S.W.3d 194, 196 (Tex. Crim. App. 2008). That is, had Hyman's trial counsel objected to the admission of the evidence at trial, based on the trial court's previous denial of the motion to suppress, his objection would have been overruled, and the evidence would have still been presented.

However, even assuming that Hyman met the first *Strickland* prong, he has failed to meet the second by showing a reasonable probability that, but for the alleged unprofessional errors by counsel, the result of the proceeding would have been different. *See Strickland,* 466 U.S. at 694, 104 S. Ct. at 2068; *Lemons v. State*, 135 S.W.3d 878, 883 (Tex. App.—Houston [1st Dist.] 2004, no pet.); *see also Holmes*, 248 S.W.3d at 196 (holding that a defendant who affirmatively states, "No objection," when evidence is offered may still request and receive a jury instruction under Article 38.23 if the evidence raises a contested factual issue that is material to the lawfulness of obtaining the evidence).

The trial court's jury charge included an instruction under article 38.23, stating:

15

You are instructed that Texas law provides that no evidence obtained by an officer or other person in violation of any provisions of the Constitution or laws of the State of Texas, or of the Constitution or laws of the United States of America, shall be admitted in evidence against the accused on the trial of any criminal case.

The jury is, therefore, instructed that if it believes, or has a reasonable doubt, that evidence was obtained in violation of the provisions of this law, then in such event the jury shall disregard any such evidence so obtained.

You are instructed that under our law a statement of a Defendant made while under arrest or in custody, may not be used in evidence against the defendant unless it appears that the statement was freely and voluntarily made without compulsion or persuasion.

Now, therefore, if you find from the evidence, or if you have a reasonable doubt thereof, that at the time of the making of the statement, if any, to Corporal Petty, the Defendant was induced by persuasion to make said statement, if any, by Corporal Petty telling and promising the Defendant that if he made a statement in regards to the marihuana, that Corporal Petty would make sure that the charged offense was filed as a misdemeanor, then you will completely disregard such statement as evidence for any purpose and you will not consider any evidence obtained as a result thereof.

*See* TEX. CODE CRIM. PROC. ANN. art. 38.23(a) (Vernon 2005).

The record reflects that not only did the jury hear near-identical testimony as that given during the suppression hearing,[9] but also that it thoroughly

---

[9] Corporal Petty testified that he did not make any promises or threats to Hyman to obtain the written statement. Hyman testified that he understood, from his conversation with Corporal Petty, that if he made the statement, that it would be a misdemeanor that he would "most likely, do just 90 days."

16

considered the matter as instructed to do so by the trial court. Of the eleven

jury notes submitted to the trial court during deliberations, several addressed

matters pertinent to the issues of reasonable suspicion and possible coercion:

> Jury Note #1: What are the cross streets surrounding the area where the car was stopped on Bowen? Where on [the] 2600th block? What is the distance from Walmart to where the car was stopped?[10]

> Jury Note #2: We, the jury, disagree as to the amount of times on the police reports, the amount of 2 oz to 4 oz of marihuana was used as opposed to 4 oz to 2 lbs (or 5 lbs as the law would dictate). We question this in reference to the possibility there was potential coercion in obtaining the statement of Mr. Vassa Hyman.

> Jury Note #4: One of the jurors states that Mr. Hyman had purchased the gas can at the neighborhood Walmart. Another juror states he had the gas can with him. Did Mr. Hyman in fact state he purchased the gas can at the Walmart[?] This evidence goes to the credibility of Mr. Hyman's testimony.

> Jury Note #5: One juror understands that the hand writing on the thumb print card, as completed by the police dept personnel, indicated the [amount] of marihuana to be 2 oz to 4 oz. Another juror believes that piece of information was objected to, sustained, and is not in evidence. Is this part of the testimony, and was the amount of 2-4 oz handwritten in the card?

> Jury Note #7: We the jurors would like to hear the testimony of both Jennifer Smith [jailer] and Corporal Petty regarding where the "2 to 4 oz of marihuana" was entered on the reports. Jurors

---

[10] The trial court responded more than once by instructing the jury on the law with regard to answering jury notes, i.e., that the jury must say that there is a disagreement on a specific point of testimony and must state the specific point upon which there was disagreement.

disagree in the testimony as to where this information is contained and whether this was testified to as a computer generated, populated area or hand written.

Jury Note #10: Your [H]onor, we would like to review Mr. Hyman's statement as entered into evidence. A juror is debating its content as to how Mr. Hyman came into possess[ion of] the marihuana, and which portion he advised the court were lies.

Based on our conclusion that the trial court did not err by denying Hyman's motion to suppress, and the inclusion in the jury charge of an instruction pursuant to article 38.23—presenting a question of disputed fact for the jury's consideration and resolution with regard to the written statement—the trial's outcome would have been the same, with or without the objection of counsel to the admissibility of the evidence at trial. *See Holmes*, 248 S.W.3d at 196. Hyman has failed to show that there is a reasonable probability that, but for his trial counsel's alleged unprofessional errors, the jury would not have convicted him, or that the trial's result was in any way unreliable. *See Strickland,* 466 U.S. at 694, 104 S. Ct. at 2068. Therefore, we overrule Hyman's second and third issues.

## V. Conclusion

Having overruled Hyman's three issues, we affirm the judgment of the trial court.

PER CURIAM

PANEL:  MCCOY, LIVINGSTON, and DAUPHINOT, JJ.

DO NOT PUBLISH
TEX. R. APP. P. 47.2(b)

DELIVERED: August 7, 2008