

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-22-00265-CR

_____

ADRIAN ROBINSON, Appellant

V.

THE STATE OF TEXAS

---

On Appeal from the 396th District Court
Tarrant County, Texas
Trial Court No. 1635269D

---

Before Sudderth, C.J.; Birdwell and Bassel, JJ.
Memorandum Opinion by Chief Justice Sudderth

## MEMORANDUM OPINION

Appellant Adrian Robinson appeals his conviction for engaging in organized crime by committing murder and by committing deadly conduct.[1] *See* Tex. Penal Code Ann. §§ 19.02(b), 22.05, 71.02(a)(1). On appeal, Robinson argues in a single point that the trial court abused its discretion by admitting extraneous offense evidence over Robinson's Rule 403 objection. *See* Tex. R. Evid. 403. We affirm.

### I. BACKGROUND

On the night of January 12, 2020, while driving his 17-year-old sister-in-law Cheyenne Moore home in his white Chevrolet Tahoe, Zachary Coble heard gunshots. Initially, the shots were not directed at his vehicle, but minutes later, his vehicle was riddled with bullets, which penetrated the windows, fenders, and doors. After the barrage of gunfire, Zachary noticed that Cheyenne was slumped over and bloody, so he rushed her to the hospital. But Cheyenne's life could not be saved. She died from her wounds.

---

[1]Robinson was indicted on six counts: murder (Count One); engaging in organized crime by committing murder (Count Two); engaging in organized crime by committing aggravated assault (Count Three); aggravated assault (Count Four); engaging in organized crime by committing deadly conduct (Count Five); and deadly conduct (Count Six). At the close of the State's case-in-chief, the trial court granted Robinson's motion for a directed verdict on Counts Three and Four. The jury convicted Robinson on Counts Two and Five, but because it could not reach a unanimous verdict on Count One or Count Six, the trial court granted Robinson's motions for a mistrial on each of those counts.

Fort Worth Police Detective Earnest Pate was assigned to investigate Cheyenne's murder. He began by using surveillance footage to piece together a series of similar and recent shootings—two on the same evening and another that had occurred two weeks earlier—and he discovered that all involved a silver Hyundai Sonata with a defective taillight.

Shortly before Cheyenne had been shot, two other shootings had occurred in the same area. Ten minutes earlier, there had been a shooting at a nearby apartment complex called the Buttercup Apartments, and just one minute before Cheyenne was shot, someone working on a red Ford Mustang had been shot near an intersection only a few blocks away.[2] Analysis of shell casings found at the three crime scenes indicated that all of the shootings—as well as a shooting that had taken place on Horne Street approximately two weeks earlier—were related. And, although the surveillance footage placed a silver Hyundai Sonata with a defective taillight at all three crime scenes on the evening of January 12, Detective Pate was unable to read its license plate.

But when Detective Pate reviewed surveillance footage from the Horne Street shooting that had occurred two weeks earlier, the Sonata's license plate could be seen. Using that license plate number, he was able to track down the vehicle's owner, Erin Baldwin. Detective Pate interviewed Baldwin, who informed him that on the night

[2]The shooting at this nearby intersection was presumably the source of the gunfire that Coble had heard shortly before Cheyenne was shot.

Cheyenne was shot, Robinson and two other men—Christopher Williams and Braylin Brown—had borrowed Baldwin's Sonata. Based on this information, Detective Pate obtained arrest warrants for Robinson, Williams, and Brown.

Detective Pate ultimately concluded that Robinson had been the one who had actually shot Cheyenne, and Robinson was later indicted on six counts pertaining to Cheyenne's shooting death.

Before trial, the State notified Robinson of its intent to present evidence of certain extraneous offenses, including the Buttercup Apartments and Mustang shootings that had taken place immediately before Cheyenne was shot. Robinson responded with a motion in limine seeking to exclude the extraneous offense evidence. After a pretrial hearing, the trial court overruled Robinson's objection to the evidence and indicated that it would allow the introduction of evidence of the other shootings as same-transaction contextual evidence. But the court clarified that Robinson would need to object to the evidence when it was offered or mentioned in front of the jury.

At trial, Detective Pate testified about his investigation of the three January 12, 2020 shootings as detailed above. In addition, Williams, who was a passenger in the Sonata at the time of the shootings on January 12, testified as a State's witness. Williams explained that on the day Cheyenne was killed, he drove with Robinson and Brown to a motel to trade vehicles with Baldwin. After swapping their BMW truck for Baldwin's "dark gray" vehicle, the three men went to the east side of Fort Worth

4

and searched unsuccessfully for a rapper whom Brown wanted to fight. Williams testified that while their car was stopped at a stop sign, Brown jumped out and began shooting at a person working on a red Ford Mustang. According to Williams, both Brown and Robinson fired at the Mustang and the person beside it, but he did not know why.

After Robinson and Brown got back in the car, the group began driving down Rosedale Street until a white Tahoe pulled up next to them. Williams testified that—again, for unknown reasons—Robinson shot out the window at the Tahoe. According to Williams, sometime later, Robinson showed him a news article about the shooting and Cheyenne's death, but Robinson did not seem remorseful about it.

Another witness, Leontye Willis, testified that Robinson had also shown him an article about Cheyenne's death and had admitted to shooting her. Again, Robinson was described as unremorseful. To the contrary, Willis described Robinson as "excited" about it.

Ultimately, the jury found Robinson guilty of Counts Two and Five of the six-count indictment—engaging in organized crime by committing murder and by committing deadly conduct. The trial court sentenced Robinson to 75 years in prison on Count Two and 20 years in prison on Count Five.[3] This appeal followed.

---

[3]These sentences are to run concurrently.

## II. DISCUSSION

In a single point, Robinson argues that the trial court abused its discretion by admitting evidence of the Buttercup Apartments and Mustang shootings over Robinson's Rule 403 objection because the evidence's probative value was substantially outweighed by a danger of unfair prejudice. *See* Tex. R. Evid. 403. However, Robinson has failed to preserve this issue for our review.

### A. Standard of Review

We review a trial court's decision to admit or exclude evidence under an abuse of discretion standard. *Zuliani v. State*, 97 S.W.3d 589, 595 (Tex. Crim. App. 2003); *Montgomery v. State*, 810 S.W.2d 372, 379 (Tex. Crim. App. 1990). We will not reverse a trial court's decision to admit or exclude evidence unless the record shows a clear abuse of discretion. *Zuliani*, 97 S.W.3d at 595. An abuse of discretion occurs only when the trial court's decision was so clearly wrong as to lie outside that zone within which reasonable persons might disagree. *Id.* If the trial court's evidentiary ruling is correct on any applicable theory of law, we will not disturb it even if the trial court gave the wrong reason for its ruling. *De la Paz v. State*, 279 S.W.3d 336, 344 (Tex. Crim. App. 2009); *Qualls v. State*, 547 S.W.3d 663, 675 (Tex. App.—Fort Worth 2018, pet. ref'd).

### B. Admissibility of Extraneous Offense Evidence

Rule 404(b)(1) generally disallows evidence of crimes, wrongs, or other acts solely to prove a person's character to show that the person acted in conformity with

6

that character on a particular occasion. Tex. R. Evid. 404(b)(1). However, such extraneous offense evidence may be admissible to prove motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. Tex. R. Evid. 404(b).

Additionally, "extraneous-offense evidence may . . . be admissible as same-transaction contextual evidence, where 'several crimes are intermixed, or blended with one another, or connected so that they form an indivisible criminal transaction.'" *Prible v. State*, 175 S.W.3d 724, 731 (Tex. Crim. App. 2005) (quoting *Rogers v. State*, 853 S.W.2d 29, 33 (Tex. Crim. App. 1993)); *see also Camacho v. State*, 864 S.W.2d 524, 532 (Tex. Crim. App. 1993). The primary purpose of same-transaction contextual evidence is to help the jury better understand the nature of the alleged offense by putting it in context. *See Swarb v. State*, 125 S.W.3d 672, 681 (Tex. App.—Houston [1st Dist.] 2003, pet. dism'd); *see also Singleton v. State*, No. 2-03-512-CR, 2004 WL 2416748, at *1 (Tex. App.—Fort Worth Oct. 28, 2004, pet. ref'd) (per curiam) (mem. op., not designated for publication) (noting that "[t]he purpose for admission" of same-transaction contextual evidence is "to help the jury better understand the nature of the alleged crime"). As the Texas Court of Criminal Appeals has recognized, "the jury is entitled to know all relevant surrounding facts and circumstances of the charged offense; an offense is not tried in a vacuum." *Prible*, 175 S.W.3d at 732 (quoting *Moreno v. State*, 721 S.W.2d 295, 301 (Tex. Crim. App. 1986)).

In addition, same transaction contextual extraneous offense evidence is admissible because in narrating one offense that is intermixed with another, it is often impracticable to avoid describing the other offense. *Mayes v. State*, 816 S.W.2d 79, 86–87 n.4 (Tex. Crim. App. 1991); *Lamb v. State*, No. 01-03-00587-CR, 2004 WL 1472114, at *2 (Tex. App.—Houston [1st Dist.] July 1, 2004, pet. ref'd) (mem. op., not designated for publication). "In other words, if narration of the primary offense would make little or no sense without bringing in the other offense, then evidence of the other offense should be admitted." *Singleton*, 2004 WL 2416748, at *1 (citing *Jones v. State*, 962 S.W.2d 158, 165 (Tex. App.—Fort Worth 1998, no pet.)).

## C. Rule 403

Like all relevant evidence, same-transaction contextual extraneous offense evidence may be excluded under Rule 403 if the danger of unfair prejudice substantially outweighs the evidence's probative value. *See King v. State*, 189 S.W.3d 347, 354 (Tex. App.—Fort Worth 2006, no pet.); *see also* Tex. R. Evid. 403.

"Rule 403 favors the admission of relevant evidence and carries a presumption that relevant evidence is more probative than prejudicial." *James v. State*, 623 S.W.3d 533, 546–47 (Tex. App.—Fort Worth 2021, no pet.) (first citing *Montgomery*, 810 S.W.2d at 389; and then citing *Emich v. State*, No. 02-18-00059-CR, 2019 WL 311153, at *7 (Tex. App.—Fort Worth Jan. 24, 2019, pet. ref'd) (mem. op., not designated for publication)). Because of this presumption, it is the burden of the party opposing the admission of the evidence to show that the evidence's probative value is substantially

outweighed by one or more of the dangers listed in Rule 403—including unfair prejudice. *James*, 623 S.W.3d at 547; *Wells v. State*, 558 S.W.3d 661, 669 (Tex. App.—Fort Worth 2017, pet. ref'd); *Sanders v. State*, 255 S.W.3d 754, 760 (Tex. App.—Fort Worth 2008, pet. ref'd).

To determine whether evidence is admissible in the face of a Rule 403 objection, the trial court must conduct a balancing test. *Montgomery*, 810 S.W.2d at 389; *see Gigliobianco v. State*, 210 S.W.3d 637, 641–42 (Tex. Crim. App. 2006). The Texas Court of Criminal Appeals has instructed that when undertaking a Rule 403 analysis, courts must balance (1) the inherent probative force of the proffered item of evidence and (2) the proponent's need for that evidence against (3) any tendency of the evidence to suggest a decision on an improper basis, (4) any tendency of the evidence to confuse or distract the jury from the main issues, (5) any tendency that a jury that has not been equipped to evaluate the probative force of the evidence would give it undue weight, and (6) the likelihood that presentation of the evidence will consume an inordinate amount of time or merely repeat evidence already admitted. *Gigliobianco*, 210 S.W.3d at 641–42.

## D. Robinson Failed to Preserve His Sole Appellate Point

To preserve error in the admission of evidence, a party generally must object each time that the objectionable evidence is offered. *Geuder v. State*, 115 S.W.3d 11, 13 (Tex. Crim. App. 2003); *Martinez v. State*, 98 S.W.3d 189, 193 (Tex. Crim. App. 2003); *Clay v. State*, 361 S.W.3d 762, 766 (Tex. App.—Fort Worth 2012, no pet.). Further,

9

for a complained-of error to be preserved for appellate review, the legal basis of the complaint raised on appeal must comport with the objection made at trial. *See Lovill v. State*, 319 S.W.3d 687, 691 (Tex. Crim. App. 2009); *Wilson v. State*, 71 S.W.3d 346, 349 (Tex. Crim. App. 2002). Because Robinson failed to object on Rule 403 grounds—or, indeed, on any grounds—when the challenged extraneous offense evidence was offered at trial, he has failed to preserve his sole appellate point. *See Lovill*, 319 S.W.3d at 691; *see also Geuder*, 115 S.W.3d at 13.

Robinson concedes that he failed to object to the admission of the extraneous offense evidence during trial, but he contends that because he filed a motion in limine complaining of the extraneous offense evidence that was heard and overruled in a pretrial hearing, he was not required to object again during trial to preserve his appellate complaint.[4] We disagree.

As noted above, before trial, the State notified Robinson of its intent to present evidence of certain extraneous offenses, including the Buttercup Apartments and Mustang shootings. Robinson filed a motion in limine requesting that the trial court instruct the State not to mention or refer to any of Robinson's extraneous offenses and arguing in the alternative that the trial court should hold a hearing outside the jury's presence before any specific mention of an extraneous offense to determine,

---

[4]Although—as Robinson concedes—he did not object at trial to the admission of the extraneous offense evidence he now challenges on appeal, he did object to the admission of evidence of a separate extraneous offense that was not addressed in the pretrial hearing on his motion in limine.

among other things, "whether the probative value of the evidence is outweighed by danger of unfair prejudice and confusion of the issue[s]."

At the pretrial hearing to determine whether the State's extraneous offense evidence was admissible, the State called Detective Pate to testify and, based on his testimony, argued that the evidence of the Buttercup Apartments and Mustang shootings was admissible as same-transaction contextual evidence. In response, Robinson expressed his disagreement with both the State's assertion that "it would not make sense for the jury not to know about all three . . . shootings" and its contention that the three shootings were "so interwoven that it[ would] not [be] possible for the State to put on evidence . . . in this case . . . without references or bringing in evidence of the other cases." He then stated that he stood on his "original objection" that the evidence was "extraneous" and "proper for punishment but not for guilt or innocence." But—crucially—at no point during the hearing did Robinson argue that the extraneous offense evidence's probative value was substantially outweighed by the danger of unfair prejudice or reference Rule 403 as a basis for excluding the evidence.

The trial court overruled Robinson's objection, and then the following exchange occurred:

> [Robinson's Counsel]:     Will I need, Your Honor, ever to object in front of the jury about this?

| | |
|---|---|
| The Court: | I think the first time you need to, yeah. And then I would give you the running objection in the presence of the jury. |
| [Robinson's Counsel]: | Without creating a -- from my experience sometimes juries run down some rabbit trail or another. . . . Is there a way I can make that objection to preserve the record without having to go into the detail that we're going in here? |
| The Court: | If you -- if we get to the point where they are going to start talking about the extraneous, you could do that before we call the witness in the presence of the jury so for purposes of the record you're covered. |
| [Robinson's Counsel]: | I'm guessing . . . [the State] will want to reference it [in its opening statement], and I would probably want to have some way to protect my objection on the record. I'm not sure I want to interrupt [the State's] opening statement. |
| The Court: | No, no, no. Before -- I think you would be covered that if you stand up and say, I'm anticipating that the State is going to go into the extraneous offenses that the Court reviewed pretrial and I renew my objection. |

Thus, the trial court clearly instructed Robinson that he would need to object to the mention or admission of the extraneous offense evidence at trial, or prior to opening statements, to preserve his objection. At that point, the trial court indicated that it would grant a running objection to obviate the need for further objections.

But Robinson did not do so. As anticipated, the State discussed the Buttercup Apartments and Mustang shootings during its opening statement, but—despite the

12

trial court's clear instructions at the pretrial hearing—Robinson did not object. Later the State presented three witnesses—Williams, Willis, and Detective Pate—who testified about the other shootings without any objection from Robinson. Finally, the State referenced the other shootings in its closing statement, but, once again, Robinson did not object.

Thus, the record clearly shows that Robinson failed to preserve his appellate complaint either by objecting on Rule 403 grounds each time the extraneous offense evidence was offered at trial, *see Geuder*, 115 S.W.3d at 13, or by obtaining a running objection on those grounds, *see id.*; *Ethington v. State*, 819 S.W.2d 854, 858–59 (Tex. Crim. App. 1991).

Robinson relies on *Maynard v. State*, 685 S.W.2d 60, 64–65 (Tex. Crim. App. 1985), to support his contention that his motion in limine was sufficient to preserve his appellate complaint, but his reliance on this case is misplaced. In *Maynard*, the appellant filed a motion in limine seeking to exclude evidence of an extraneous offense. *Id.* at 63. At trial, when the State attempted to elicit evidence of the extraneous offense, the appellant objected and requested that the matter be taken up outside the presence of the jury. *Id.* at 64. The trial court then dismissed the jury and held a hearing on the admission of the extraneous offense evidence. *Id.* The appellant objected at the hearing and again in the presence of the jury when the evidence was introduced. *Id.* The trial court overruled both objections. *Id.*

On appeal, the appellant argued that his motion in limine was sufficient to preserve error, but the Court of Criminal Appeals emphatically rejected this argument, stating that the appellant's "contention [was] patently without merit" and noting that "[i]t is axiomatic that motions in limine do not preserve error." *Id.* However, the court agreed that the appellant's objection made during trial at the hearing outside the jury's presence when the State attempted to introduce the extraneous offense evidence was sufficient to preserve the asserted error. *Id.* at 64–65.

Thus, *Maynard* is distinguishable from the present case and does not support Robinson's preservation argument. Because—unlike the appellant in *Maynard*—Robinson never objected to the admission of the extraneous offense evidence during trial, his preservation argument rests solely on his motion in limine. But, as noted above, the *Maynard* court emphatically rejected the notion that a motion in limine could preserve error. *Id.* at 64. Thus, far from supporting Robinson's preservation argument, *Maynard* actually undermines it.

Because Robinson failed to object on Rule 403 grounds each time the State offered evidence of the Buttercup Apartments and Mustang shootings at trial or to obtain a running objection on those grounds, he did not preserve his appellate complaint for our review. *See* Tex. R. App. P. 33.1(a); *see also Gary v. State*, No. 02-21-00171-CR, 2023 WL 2805477, at *5–7 (Tex. App.—Fort Worth Apr. 6, 2023, no pet.) (mem. op., not designated for publication) (holding that appellant's written objection—which was never ruled on—and motion in limine did not preserve his

14

appellate argument that extraneous offense evidence was not admissible under Rule 403 because he did not object when the evidence was offered at trial or obtain a running objection on Rule 403 grounds); *Gauna v. State*, 534 S.W.3d 7, 10–11 (Tex. App.—San Antonio 2017, no pet.) (holding that Rule 403 objection during pretrial hearing under Article 38.37 of the Texas Code of Criminal Procedure was not sufficient to preserve error and that defendant was required to renew his objection when the witness testified or obtain a running objection).

Accordingly, we overrule Robinson's sole point.

### III. CONCLUSION

Having overruled Robinson's sole point, we affirm the trial court's judgment.

/s/ Bonnie Sudderth

Bonnie Sudderth
Chief Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered: July 27, 2023